UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ryan Wick,<br><br>                      Plaintiff,<br><br>v.<br><br>Nancy Berryhill, Acting Commissioner of the Social Security Administration,<br><br>                      Defendant. | Case No.: 16-cv-1987-JM-AGS<br><br>**REPORT AND RECOMMENDATION ON SUMMARY JUDGMENT MOTIONS (ECF Nos. 13 & 14)** |

In 1996, Congress amended the Social Security Act to make it much more difficult for drug abusers to obtain disability benefits. Under that amendment, when drug addiction contributes significantly to a disability, benefits are strictly prohibited. *See Parra v. Astrue*, 481 F.3d 742, 744 (9th Cir. 2007). The claimant "bears the burden of proving that his substance abuse is not a material contributing factor to his disability." *Id.* at 744-45.

In this case, a psychiatric expert concluded that plaintiff's drug abuse caused his schizophrenia to develop and worsen. Based on this, a judge denied plaintiff's disability-benefits application. On appeal, plaintiff claims that substance abuse was not a material contributing factor to his disability. After all, the expert conceded it was "possible" that some schizophrenics—whether sober or drug-addicted—might be doomed to permanent disability. But such hypotheticals do not carry plaintiff's burden. Even if theoretical schizophrenics can prove that drug abuse played no part in their disability, plaintiff has not. Thus, the judge's ruling must be upheld.

# BACKGROUND

Plaintiff Ryan Wick suffers from schizophrenia and a drug addiction disorder. (AR 14.) He reports that "things started messing up in my mind" around age 15, and that he began using marijuana at 17. (AR 262.) At 19, he used cocaine, LSD, and marijuana during the summer, and months later was hospitalized for his first psychotic episode. (AR 17, 262; *see* AR 40.) Shortly before he turned 20, he began using a combination of marijuana and the psychoactive plant Salvia divinorum, and was later hospitalized for another psychotic episode. (AR 17, 272.) His condition steadily declined until age 22 when he attempted suicide and was hospitalized for two weeks for psychotic symptoms. (AR 19, 60, 288.) Since age 22, he denies using drugs or alcohol and has produced a negative drug screen. (AR 288, 321.) Although he is now on a more aggressive medication regimen, his condition still leaves him unable to work. (AR 59, 68-69, 112.)

The Social Security Administration granted Wick adult disability benefits starting at age 22. (AR 112.) But Wick claims that he became totally disabled at age 20 and seeks disabled child's benefits for the intervening two years. (AR 11); *see* 42 U.S.C. § 402(d)(1)(B) (Social Security child's insurance benefits require that any disability "began before [the claimant] attained the age of 22").

At the hearing on his application for child's benefits, the main issue was whether Wick's drug abuse before age 22 was a material contributing factor to his disability, which would be disqualifying. A psychiatric expert, Nathan Strahl, M.D., testified that "some adverse event" related to Wick's substance abuse likely triggered his descent into schizophrenia. (AR 60.) In Dr. Strahl's opinion, if Wick had stayed on his medications and not abused drugs, his condition would not have deteriorated so badly and he "likely would not be disabled." (AR 60; *see* AR 19-20, 62.) The ALJ adopted Dr. Stahl's opinion, found that substance abuse was "a contributing factor material to the determination of disability" before age 22, and denied Wick's application. (AR 12, 21, 23.)

# DISCUSSION

## A. Standard of Review

A court "may set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) (citation omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (citation omitted).

## B. Drug Abuse Was a Material Contributing Factor to Disability

If drug addiction is "a contributing factor material to the Commissioner's determination that the individual is disabled," then benefits are prohibited. *Parra*, 481 F.3d at 744 (citing 42 U.S.C. § 423(d)(2)(C)). When drug abuse evidence arises, "the claimant bears the burden of proving that his substance abuse is not a material contributing factor to his disability." *Parra*, 481 F.3d at 744-45. The "key factor" in this inquiry is whether the claimant would still be "disabled if [the claimant] stopped using drugs[.]" *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001) (citing 20 C.F.R. § 404.1535(b)(1)).

Wick does not contest the finding that he abused drugs. (*See* ECF No. 13-1, at 4-7; AR 18, 40.) He argues instead that the ALJ erred in concluding that his substance abuse was a material contributing factor to his disability. But this finding is supported by substantial record evidence. Specifically, Dr. Strahl testified that if Wick had stopped using drugs and complied with his treatment course, his mental health issues would have been stable enough to permit gainful work. (AR 18-20, 60-65.) And although it was Wick's burden to prove otherwise, he offered no other medical evidence to the contrary.

Rather, Wick selectively reads Dr. Strahl's testimony as supporting his claim that, even if he stopped using drugs, he would have still been disabled. Wick asserts that— regardless of any substance abuse—his mental health issues made him totally unable to comply with his prescribed treatment, rendering him incurably disabled. And he claims that Dr. Strahl supports this view because he "opined that the issue here is with

3

compliance," and that it is "possible" that someone with Wick's impairments might be incapable of "seek[ing] further treatment" or doing "what is correct." (ECF No. 13-1, at 6 (citing AR 67).)

This argument has two fatal flaws: the facts and the law. First, the law: "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). Thus, even if Wick's somewhat strained take on Dr. Strahl's testimony were fair, it would not matter, because that testimony is also susceptible to the ALJ's rational interpretation.

Next, the facts: Dr. Strahl testified that Wick's drug abuse likely caused his schizophrenia. (AR 19, 60 (The "disorder was probably initiated by some adverse event due to the drugs he was taking[.]").) And the reason the schizophrenia intensified, according to the doctor, was not that his disease made compliance impossible, but because Wick voluntarily chose to stop treatment. In fact, he thought Wick's situation was "[n]o different than a diabetic who doesn't take his medicine or a hypertensive who doesn't take their medicine." (AR 61.) Dr. Strahl returned to this theme of voluntary non-compliance repeatedly. (*See, e.g.*, AR 59 ("What [Wick] has done, unfortunately to his own demise, is let the disorder progress basically untreated[.]"); AR 60-61 (Wick "really did himself damage" by not "continu[ing] on treatment."); AR 61 ("[W]ith medicine he was acting more normal but he refused to do [treatment] and has suffered really irreparable harm[.]"); AR 67 (Wick "refused to take the medication," which is what is "causing the demise."); AR 68 (Even when "he gets better, he'll stop his medication once again, which has happened multiple times in the past.").)

If Wick had contrary evidence, he had the burden to produce it. For example, if medical records reflected that voices in his head forced him to refuse his medications, perhaps an ALJ could find that recovery was impossible, regardless of any drug abuse. But, as the ALJ points out, the medical records show the opposite. On one occasion, Wick reported that "he was not taking the [antipsychotic medication] Zyprexa prescribed by the

4

doctor" because "it made him sleepy and he did not feel that it was effective[.]" (AR 17, 272.) And even his mother testified that he took Zyprexa "for nine months but after nine months, when he was about 20, he quit taking it. . . . [A]nd that's when I saw him get progressively worse." (AR 49.)

Thus, Wick failed to meet his burden. And substantial evidence supported the ALJ's conclusion that Wick's drug abuse was a material contributing factor to his disability.

C. **Suzanne Brown's Letter**

Finally, Wick faults the ALJ for finding that his mother's letter to the court included inaccurate information about his drug-abuse history and therefore giving it less weight. "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted). In the letter, Wick's mother, Suzanne Brown, stated that her son "has never self medicated with drugs or alcohol[.]" (AR 255.) The ALJ found that this statement was "not accurate" based on the "medical records" and Wick's own admissions. (AR 18.) And he concluded that the letter was entitled to "less weight" because Brown "may not be as aware of the claimant's activities and symptoms as she may believe she is." (*Id.*)

Wick complains that the ALJ took this statement out of context. Although his mother wrote that he never "self medicated," Wick argues that she was not implying that he never "experimented" with drugs. He contends it is a matter of degree: "[s]elf medicating" is a "much bigger problem" than "experimenting." (ECF No. 13-1, at 8.) But even so, his mother was still misinformed. Wick had a "much bigger problem" with drug use than mere experimentation. He abused drugs, according to the ALJ's unchallenged finding. Furthermore, if we read her letter in context, as Wick requests, Brown is saying this: while she worries about her son's significant psychiatric problems, she is thankful that he "never" had a drug problem. (*See* AR 18, 255.) In fact, her hearing testimony makes clear that she did not know of her son's drug problem. She testified that she had no "direct knowledge of his abusing LSD or marijuana" and "no" memories of her son using any drugs. (AR 42.)

5

So, the ALJ appropriately found that she "may not be as aware" of Wick's activities as she might think, which was a germane reason for giving her comments less weight.

## CONCLUSION

Substantial evidence supports the ALJ's finding that drug abuse was a material contributing factor in Wick's disability, and Wick failed to carry his burden to prove otherwise. Thus, this Court recommends that Wick's summary judgment motion (ECF No. 13) be **DENIED** and defendant's cross-motion for summary judgment (ECF No. 14) be **GRANTED**. The parties must file any objections to this report by August 24, 2017. *See* Fed. R. Civ. P. 72(b)(2). A party may respond to any such objection within 14 days of being served with it. *See id.*

Dated: August 10, 2017

Hon. Andrew G. Schopler
United States Magistrate Judge

6

16-cv-1987-JM-AGS